UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JAMES HODRICK,

    Plaintiff,

v.                                                         05-3066

ROGER E. WALKER et al.,

    Defendants.

## Case Management Order

    The plaintiff, currently incarcerated in Pinckneyville Correctional Center, filed this action pursuant to 42 U.S.C. Section 1983 challenging incidents at Taylorville Correctional Center that culminated in an allegedly false disciplinary ticket, causing the plaintiff to lose good time, among other punishments.

    The court is required by 28 U.S.C. §1915A to conduct a merit review of the Complaint, and through such process to dismiss any legally insufficient claims, or the entire action if warranted. A merit review hearing was scheduled to aid the court in this review (and then rescheduled at the plaintiff's request), but was ultimately cancelled as unnecessary. The court has carefully reviewed the complaint and exhibits, which already clearly set out the claims.

    The merit review standard is the same as a motion to dismiss standard. *Pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972). The allegations are taken as true, and a claim can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521.

    For the reasons below, the court concludes that the plaintiff's Section 1983 claim is barred at this time. The plaintiff's claims, if true, show that he was unconstitutionally disciplined and that his good time should be restored. However, according to Supreme Court case law, he cannot seek that restoration (or damages) under Section 1983 until he has otherwise invalidated the discipline. He must instead proceed through the habeas corpus route, if he can at all.

## Allegations

The events occurred during the plaintiff's incarceration at Taylorville Correctional Center in 2004.

On August 3, 2004, defendant Ellrick shook down the plaintiff's cell and confiscated a "black and mild" cigar. The plaintiff was escorted to segregation.

That day, defendants Huber and Squires questioned the plaintiff as part of an internal investigation into the trafficking of contraband (cigars, food, and drugs) between inmates at the carwash and IDOC employees. The plaintiff repeatedly denied any knowledge of such trafficking–he did not even work at the carwash. He had gotten the cigar for $2 from an inmate (who had properly bought it at another prison), not from illegal trading or trafficking.

Defendants Huber and Squires apparently did not believe the plaintiff. They threatened him with charges of interfering with the investigation. They also made thinly veiled threats about how difficult they could make life for the plaintiff: "I may think of opening a new chapter in your case–you might go to a max joint"; "How about I arrange where you don't see your wife for a whole year?" Through these threats, they tried to pressure him into becoming a confidential informant. The plaintiff resisted. At the end of the questioning, the plaintiff refused to sign any statements, for fear that the defendants would later doctor the statement to their ends. The plaintiff was taken back to segregation.

On August 16, 2004, the plaintiff was written a disciplinary report charging him with: 1) impeding or interfering with an investigation (#110) and 2) drugs and drug paraphernalia (#203). The first page of the report is largely illegible, but the second states that a "confidential source" reported overhearing the plaintiff tell another inmate (Johnson) that the plaintiff was getting marijuana from a female visitor. According to the disciplinary report, the confidential source reportedly witnessed the plaintiff and inmate Johnson removing tobacco from the cigars, and then later witnessed them smoking the altered cigars, which reportedly smelled like marijuana. The report accused the plaintiff of refusing to answer questions about where he obtained his cigar.

After learning that the plaintiff had not received visitors during the time in question, defendant Huber changed his story: instead of the confidential informant overhearing the plaintiff's statement, Huber said that he himself had overheard the plaintiff complain about not getting "his stuff" after his female visitor was placed on restriction. Though marijuana residue was found in a corn cob pipe of inmate Johnson, there is nothing in the record to show that any marijuana residue was found on any of the plaintiff's possessions.

The Adjustment Committee reduced the drug charge to contraband, but they did not identify the contraband, nor did the plaintiff have notice or an opportunity to defend himself against the contraband charge.

The Adjustment Committee found the plaintiff guilty on both counts, imposing one year across the board (1 year loss of good time credits, 1 year segregation, 1 year C grade). This was despite the fact that the plaintiff did not have any visitors during the time in question, and therefore could not have received marijuana from a visitor. He was not allowed to call witnesses, and his requests for the identity of the confidential informant were denied. He was also denied a request to take a drug test and a polygraph test.

Before the plaintiff was shipped out, he found himself in the segregation yard with inmate Johnson. Johnson admitted to receiving marijuana, beer, bullets and used condoms from an employee at the carwash. Johnson said that the employee was a friend of Warden Sims, and that Sims advised Johnson to "hold it between them."

On appeal, the Administrative Review Board initially upheld both guilty findings and the punishment. However, in January, 2005, the Board addressed the issue again and reversed the guilty finding on the contraband charge for insufficient evidence. The Board upheld the guilty finding on the impeding investigation charge, but reduced the punishment to three months across the board.

**Analysis**

*Interfering/Impeding Investigation Charge*

The plaintiff has a constitutionally protected interest in the good time credits he has earned. *Whitlock v. Johnson*, 153 F.3d 380, 385 (7th Cir. 1988). Before those credits can be taken from him, the defendants must provide him with the due process required by the Constitution, as set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The minimum requirements of procedural due process are satisfied in the prison disciplinary context when the prisoner is provided with advance written notice in order to inform the prisoner of the charges and to enable the prisoner to marshal the facts and prepare a defense. There must also be at least a brief period of time after receiving notice of the charge, no less than 24 hours, so that the prisoner can prepare for his appearance at the disciplinary hearing. The prisoner is entitled to be heard before an impartial decision maker and to call witnesses and present evidence, if consistent with the prison's safety and correctional goals. Finally, there must be a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 529, 94 S.Ct. 2963 (1974). Once these procedural protections are satisfied, "'the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by 'some facts.'" *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999)(quoted cite omitted).

Taking the plaintiff's allegations as true, he was not allowed to call witnesses at his disciplinary hearing, and there was insufficient evidence to find him guilty of the charges. He seeks damages and the restoration of his good time.

The plaintiff's allegations do state procedural due process claims, but they also imply that the plaintiff's good time should be restored, and therefore that he should be released from prison sooner. Prisoners "challeng[ing] the fact or duration of their confinement and seek[ing] immediate or speedier release" (such as the restoration of good time credits) must pursue their challenge under the federal habeas statute, not § 1983. *DeWalt v. Carter*, 224 F.3d 607, 614 (7th Cir. 2000), *citing Preiser*, 411 U.S. at 489-90. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court ruled that § 1983 suits for damages cannot proceed if they "challeng[e] the loss of good time credits in prison disciplinary actions (when the fact or duration of confinement was implicated)" even if the plaintiff does not seek a restoration of good time. *DeWalt v. Carter*, 224 F.3d 607, 615 (7th Cir. 1999), *citing Edwards v. Balisok,* 520 U.S. at 648.

Accordingly, the plaintiff cannot proceed under Section 1983 regarding the disciplinary ticket and ensuing punishment on the intimidation/threat charge. The court must therefore dismiss this claim without prejudice because it was filed under the wrong "legal label." *See Glaus v. Anderson*, 408 F.3d 382 (7th Cir. 2005). The court is not deciding the merits of the claim. "Without prejudice" means that the plaintiff may refile his claim as a habeas corpus action under 28 U.S.C. § 2254, subject to the rules and limitations of those proceedings (for example, exhaustion of state remedies). The court expressly states no opinion on the potential merits of a habeas corpus petition by the plaintiff.

The plaintiff should carefully consider the consequences and requirements of filing a habeas corpus action before doing so. For example, habeas corpus actions have strict time limits and require exhaustion of remedies in state court. 28 U.S.C. § 2254(b)(1). Additionally, prisoners are, for the most part, limited to bringing one habeas corpus petition. *See* Rule 9 governing 28 U.S.C. § 2254 cases; *Pischke v. Litscher*, 178 F.3d at 500. If the first petition is denied, second or successive petitions are not allowed except under very limited circumstances. *See* 28 U.S.C. § 2244(b)(2). Further, to succeed on the merits the plaintiff must show that the state's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Schaff v. Snyder*, 190 F.3d 513 (7th Cir. 1999).

*Drug/Contraband Charge*

These drug/contraband charges were ultimately expunged for insufficient evidence by the Administrative Review Board. Thus, *Heck* and the other cases discussed above arguably do not bar an action under Section 1983 regarding this charge, because the charge has already been invalidated.[1]

---

[1] This claim is likely so "inextricably intertwined" with the impeding/interfering charge that it, too, is barred by *Heck*, but the court will treat it as not for purposes of this order. *See Lusz v. Scott*, 126 F.3d 1018, 1023 (7th Cir. 1997)(plaintiff waived argument that his claim regarding absence of statement of evidence was not inextricably intertwined with barred due

However, any loss of good time attributable to this charge (to the extent it can be parsed from the intimidation/threat charge) was cured by the expungement. The plaintiff therefore suffered only a temporary deprivation of good time credit which did not materialize, because it was expunged before he had to serve the extra time. *See In re Hancock*, 192 F.3d 1083, 1086 (7th Cir. 1999)(rehearing cures procedural defects).[2]

The plaintiff arguably suffered other deprivations from the temporary conviction on this charge, but they do not amount to constitutionally protected interests. For example, the plaintiff was transferred and spent time in segregation and was demoted to C status. And, the plaintiff was transferred from a minimum security prison to a maximum security prison. However, segregation, by itself, and transfer to a more restrictive prison, do not implicate constitutionally protected interests. The plaintiff has no constitutional right to avoid transfer to a maximum security prison (other than a "supermax" type prison), and no constitutional right to be housed with the general population (provided that the segregation is typical, rather than a severe forms of isolation found in supermax prisons, for example). *Wilkinson v. Austin*, 125 S.Ct. 2384 (2005)("We have held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.")(citing *Meachum v. Fano*, 427 U.S. 215 (1976)); *Lekas v. Briley*, 405 F.3d 602, 610-613 (7th Cir. 2005)(no procedural due process claim for disciplinary segregation at Stateville–alleged deprivations showed no atypical, significant hardship);   No inference arises that the plaintiff's conditions in segregation or at Pinckneyville were an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997); *cf Wilkinson v. Austin*, 125 S.Ct. 2384 (2005)(inmate had liberty interest in avoiding assignment to supermax prison). Thus, the plaintiff states no procedural due process claim with regard to the drug/contraband charge, which was expunged.

The court sees no other constitutional claims in the allegations. The defendants' verbal threats to make his life difficult in prison if he did not give information on other inmates does not rise to the level of a constitutional violation. *See McDowell v. Jones*, 990 F.2d 433 (8th Cir. 1993)(verbal threats not generally actionable under Section 1983). The court understands that the plaintiff did not give the information because he did not have it, but that goes to the sufficiency of evidence against him in the interfering/impeding charge, a claim that is barred by *Heck*.[3] Likewise, if the plaintiff is allegation that the disciplinary report was knowingly false and in retaliation for his refusal to become an informant, that would also challenge the validity of the

---

process claim, but leaving open question whether the claim might be immediately cognizable in another case).

[2]The court believes *Hancock* is analogous because, although no rehearing at the adjustment committee level took place, the hearing on the appeal level performed the same function. In the end, there was "no-harm, no-foul" with regard to the contraband charge, at least from a due process perspective.

5

punishment imposed on him for interfering with an internal affairs investigation.

    IT IS THEREFORE ORDERED:

    1) The plaintiff's complaint is dismissed, without prejudice, as barred by *Heck v. Humphrey,* 512 U.S. 477 (1994) and progeny. All pending motions are denied as moot and this case is closed, parties to bear their own costs;

    2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)©. If the plaintiff does choose to appeal, he will be liable for the appellate filing fee of $455 irrespective of the outcome of the appeal.

    Entered: This 13th Day of April, 2006.

                                             **s\Harold A. Baker**

                                             HAROLD A. BAKER
                              UNITED STATES DISTRICT JUDGE